UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

CURTIS O'NEIL,                          ) 1:15CV0960
                                        )
         Petitioner                     )
                                        ) JUDGE PATRICIA GAUGHAN
         v.                             ) (Mag. Judge Kenneth S. McHargh)
                                        )
JOHN COLEMAN, Warden,                   )
                                        )
         Respondent                     ) REPORT AND
                                        ) <u>RECOMMENDATION</u>


McHARGH, MAG. JUDGE

The petitioner Curtis O'Neil ("O'Neil") has filed a petition pro se for a writ of habeas corpus, arising out of his 2008 conviction for rape, aggravated robbery, aggravated burglary and other charges, in the Portage County (Ohio) Court of Common Pleas.  In his petition, O'Neil raises seven grounds for relief:

> 1.  The trial court erred by ordering petitioner to serve a consecutive sentence without making the appropriate findings required pursuant to [Ohio Rev. Code §] 2929.14 and HB 86.
>
> 2.  The trial court erred by failing to correct an allied offenses sentencing error, [Ohio Rev. Code §] 2941.25(A).
>
> 3.  The court of Appeals for the Eleventh Appellate District, Portage County, Ohio erred by failing to vacate the petitioner's sentence under [Ohio Rev. Code §] 2953.08(a)(4).
>
> 4.  The trial court erred to the prejudice of the petitioner by successive prosecution in his criminal case, whereby, the Petitioner was excluded as a [principal] suspect to the crime, when his DNA did not match, and his first trial resulted in a hung jury and declared a mistrial.

> 5. The trial court erred by sentencing Petitioner to five (5) consecutive firearms specifications for a total of fifteen (15) years, for felonies committed as part of the same act, spree, offense, or transaction, in violation of [Ohio Rev. Code §] 2929.14(D)(1)(b).
>
> 6. The petitioner was denied effective assistance of counsel, whereby, trial counsel deliberately withheld material evidence that exonerated Petitioner of the crimes alleged against him.
>
> 7. The trial court erred by depriving the Petitioner of his Constitutional Rights to a fair trial by an impartial judge and jury.

(Doc. 1, § 12.)

The respondent has filed a motion to dismiss (doc. 5), and O'Neil has filed an opposition (doc. 6).

## I. FACTUAL AND PROCEDURAL BACKGROUND

The state court of appeals set forth the following factual and procedural background:

> Appellant [O'Neil] was indicted for rape, in violation of R.C. 2907.02(A)(2); aggravated robbery, in violation of R.C. 2911.01(A)(1) and (C); aggravated burglary, in violation of R.C. 2911.01(A)(2)(B); kidnapping, in violation of R.C. 2905.01(A)(2)(4) and (C), each being a felony of the first degree; and intimidation, in violation of R.C. 2921.04(B) and (D), a felony of the third degree. Each offense included a firearm specification. The case went to trial in July 2008. After the jury was unable to reach a verdict, the court declared a mistrial and reset the case for a second jury trial in August 2008.
>
> The evidence demonstrated that on March 1, 2008, at about 1:30 a.m., appellant and an accomplice, each with guns drawn, forced their way into Brock BeBee's apartment in Kent, Ohio, and, while aiming their guns at him, yelled that this was a robbery.

At that time, Brock's girlfriend and his friend Tank were visiting him. When appellant broke into the apartment, Brock and Tank were in the living room and Brock's girlfriend was in Brock's bedroom in his bed watching television.

Appellant's accomplice took Brock into the kitchen, while appellant stayed with Tank in the living room. While holding Brock at gunpoint in the kitchen, the accomplice took cash from his wallet. Meanwhile, appellant stole cash from Tank in the living room.

Appellant was aware that Brock's roommate held card games in their apartment involving large amounts of money. Appellant asked Brock where the money was. Appellant started going through the closet in the living room, but did not find anything. He and his accomplice then took Brock and Tank down the hallway and into the back bedroom and forced them to search the closet. When they did not find any money, appellant became angry and said that if they did not find the money, he was going to shoot someone.

Appellant's attention was then drawn to Brock's bedroom, in which his girlfriend was watching television in bed. This was 15 minutes after appellant had broken into the apartment. Appellant went into Brock's room, while his accomplice stayed with the others in the kitchen. Appellant pointed his gun at Brock's girlfriend. He then slammed the door shut and she started screaming and crying.

Appellant looked through Brock's closet and said, "where's the money?" Brock's girlfriend said she did not know. Appellant then told her to get out of bed and he looked for money under the bed. Then, when she was about to get back in bed, appellant pulled his pants down and, while he was holding his gun on her, forced her to give him oral sex. He then got up and locked the bedroom door. Thereafter, he laid on the bed and told her to get on top of him. Appellant forced her to submit to vaginal intercourse while pointing his gun at her side.

Sometime later, appellant's accomplice started banging on the door, yelling, "come on, we gotta get out of here." Some minutes later, appellant got up, opened the bedroom door, and went into the living room. The rape victim remained in the bedroom crying hysterically. As appellant and his accomplice left the apartment, they said to Brock and Tank, "if you call the police * * *, we will be back."

> Following the trial, the jury returned a verdict finding appellant guilty of each offense and firearm specification as charged in the indictment.
>
> The court conducted a sentencing hearing. The court considered appellant's lengthy criminal history, including his prior conviction of robbery for which he was sentenced to two years in prison. The trial court sentenced appellant to nine years in prison for rape, eight years for aggravated robbery, eight years for aggravated burglary, five years for kidnapping, and four years for intimidation. The court also sentenced him to three years for each of the five firearm specifications. The sentences for all offenses and firearm specifications were ordered to be served consecutively to each other for a total sentence of 49 years in prison. The court noted that appellant's sentence was necessary "to protect society."
>
> Appellant [O'Neil] appealed his conviction and sentence. At oral argument, the prosecutor indicated for the first time that the trial court had not properly imposed postrelease control and asked us to reverse and remand the matter for re-sentencing. In State v. O'Neil, 11th Dist. No.2008–P–0090, 2009–Ohio–7000, we affirmed appellant's conviction, but remanded the case for re-sentencing pursuant to State v. Simpkins, 117 Ohio St.3d 420, 884 N.E.2d 568, 2008–Ohio–1197. Because we vacated the sentence, we did not address the other sentencing issues raised as we found them to be moot. We note that, pursuant to the Supreme Court of Ohio's recent holding in State v. Singleton, 124 Ohio St.3d 173, 920 N.E.2d 958, 2009–Ohio–6434, the trial court's error could have been corrected via the remedial procedure provided for at R.C. 2929.191.
>
> The trial court re-sentenced appellant [O'Neil] on May 7, 2010. The court noted that, based on the evidence presented at trial, each crime committed by appellant was committed with a separate animus. The court also noted that "what [appellant] did here was horrendous." The court then imposed the same sentence it had previously imposed. The court also correctly imposed five years mandatory post-release control.

(Doc. 5, [RX 22](RX 22), at 2-5; State v. O'Neil, No. 2010-P-0041, 2011 WL 1837406, at *1-*2

(Ohio Ct. App. May 6, 2011).)

4

## A. Direct Appeal

O'Neil filed a timely direct appeal, which raised the following assignments of error:

> 1. Trial counsel for appellant failed to provide effective assistance at trial because there were substantial breaches or violations of defense counsel's duties to his client, and the appellant's defense was prejudiced by counsel's ineffectiveness.
>
> 2. The trial court erred in sentencing appellant to consecutive sentences for multiple offenses, and including five (5) consecutive firearm specifications, totaling forty-nine (49) years, which for practical purposes constitutes life imprisonment without parole, which is contrary to law, including Ohio's statutory sentencing law guidelines and requirements.[1]
>
> 3. The Ohio sentencing law, including that a trial judge may with full discretion, without a jury verdict or admission by offender, impose consecutive sentences for multiple sentences exceeding the statutory maximum for the most serious conviction, determined by the jury, is unconstitutional base on the separation of powers principle embodied in due process of law and by depriving appellant of his right to a jury trial.

(Doc. 5, RX 9.) The court of appeals affirmed the convictions, as noted in the Procedural Background (above), but vacated the sentence because:

> . . . in the trial court's sentencing entry, the court advised appellant that post-release control was discretionary when, in fact, it is mandatory. R.C. 2967.28. Further, the trial court did not advise appellant that he was subject to any particular term of post-release control at either the sentencing hearing or in the court's sentencing entry.

---

[1] There were five sub-claims to the second assignment of error, which will not be set forth here. See generally doc. 5, RX 9, at ii.

(Doc. 5, RX 11, at 21; State v. O'Neil, No. 2008-P-0090, 2009 WL 5176604, at *11 (Ohio Ct. App. Dec. 31, 2009).)  The case was remanded to the trial court for re-sentencing.  Id.

O'Neil appealed to the Supreme Court of Ohio, presenting the following proposition(s) of law:

> Proposition of Law No. I:  Appellant, an indigent defendant, was deprived of his right to effective assistance of counsel pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution where his appointed trial counsel:  (1) failed to subpoena and call to testify a favorable witness and, (2) request that Appellant show his hands, and tattoo(s), to the jury up close, as both were done at the first jury trial which resulted in a hung jury and mistrial; (3) failed to file a Notice of Alibi, and to subpoena and call to testify such alibi witness at trial; (4) failed to file a Motion to Suppress Identification Testimony; (5) failed to adequately cross-examine state witnesses on prior inconsistent statements made to police and in hospital records; (6) failed to object, and stipulated, to the admissibility of the second DNA evidence when the state failed to establish the chain of evidence and said evidence was contrary to previously admitted DNA evidence which excluded Appellant as a source; and (7) failed to make an adequate record at the sentencing hearing regarding the proportionality issue and the other applicable Ohio sentencing laws and guidelines.

(Doc. 5, RX 13.)  The Ohio Supreme Court denied leave to appeal, and dismissed the appeal as not involving any substantial constitutional question, on Aug. 25, 2010.  (Doc. 5, RX 14; State v. O'Neil, 126 Ohio St.3d 1544, 932 N.E.2d 339 (2010).)

B.  Re-Sentencing

O'Neil was resentenced by the trial court on May 7 and 14, 2010. The court sentenced O'Neil to an aggregate sentence of forth-nine years, as before, with the additional advisements concerning post-release control. (Doc. 5, RX 15-16.)

O'Neil filed a timely appeal of his resentencing on June 15, 2010. (Doc. 5, RX 17.) O'Neil raised the following assignments of error:

> 1. The trial court erred in sentencing appellant to consecutive sentences for multiple offenses, and including five (5) consecutive firearm specifications, totaling forty-nine (49) years, which for practical purposes constitutes life imprisonment without parole, which is contrary to law, including Ohio's statutory sentencing law guidelines and requirements.[2]
>
> 2. The Ohio sentencing law, including that a trial judge may with full discretion, without a jury verdict or admission by offender, impose consecutive sentences for multiple sentences exceeding the statutory maximum for the most serious conviction, determined by the jury, is unconstitutional base on the separation of powers principle embodied in due process of law and by depriving appellant of his right to a jury trial.

(Doc. 5, RX 18.) After oral argument, O'Neil filed a supplemental brief with the following additional sub-claim to the second assignment of error: "Whether or not Appellant's multiple offenses are allied offenses of similar import, and should be merged for sentencing requires examination if the offenses can be committed by the same conduct, and if so, whether the offenses were committed by the same conduct, or by a similar act, committed with a single state of mind." (Doc. 5, RX 20.)

---

[2] There were five sub-claims to the first assignment of error, which will not be set forth here. See generally doc. 5, RX 18, at i-ii.

The court of appeals affirmed the judgment of the trial court. (Doc. 5, RX 22; O'Neil, 2011 WL 1837406.) O'Neil appealed to the Supreme Court of Ohio, presenting the following proposition(s) of law:

> The Trial Judge erred, contrary to Ohio sentencing laws and guidelines and contrary to the United States Supreme Court decisions subsequent to State v. Foster, which held portions of Ohio's sentencing law unconstitutional and excised certain provisions, by sentencing Appellant to consecutive sentences for multiple offenses, including five (5) consecutive firearm specifications, totaling forty-nine (49) years, which for practical purposes in Appellant's case is a life sentence. Judicial fact finding providing reasons, under a system of advisory guidelines, does not violate a Defendant's Sixth Amendment rights when the guidelines serve the purpose of providing presumptive reasonableness to a sentence, rather than requirements of mandatory findings.

(Doc. 5, RX 24.)

The Ohio Supreme Court denied leave to appeal, and dismissed the appeal as not involving any substantial constitutional question, on Oct. 5, 2011. (Doc. 5, RX 26; State v. O'Neil, 129 Ohio St.3d 1492, 954 N.E.2d 664 (2011).)

O'Neil filed a petition for a writ of habeas corpus in this court on May 15, 2015. (Doc. 1.)

## II.  HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal courts must apply when considering applications for a writ of habeas corpus. Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with

respect to any claim which was adjudicated on the merits by a state court. The Supreme Court, in Williams v. Taylor, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2002). See also Lorraine v. Coyle, 291 F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Williams, 529 U.S. at 405. See also Price v. Vincent, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect. Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law. Williams, 529 U.S. at 410-412; Lorraine, 291 F.3d at 422.

9

III.  STATUTE OF LIMITATIONS

The respondent filed a motion to dismiss, which argues the petition is untimely filed.  ([Doc. 5](), at 13-16.)

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) requires a state prisoner seeking a federal writ of habeas corpus to file his petition within one year after his state conviction has become "final."  Carey v. Saffold, 536 U.S. 214, 216 (2002) (citing 28 U.S.C. § 2244(d)(1)(A)).  The conviction becomes final "by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  Thus, the one-year statute of limitations does not begin to run until all direct criminal appeals in the state system are concluded, followed by either completion or denial of certiorari before the United States Supreme Court, or the expiration of the time allowed (90 days) for filing for certiorari.  Clay v. United States, 537 U.S. 522, 528 n.3 (2003); Anderson v. Litscher, 281 F.3d 672, 675 (7th Cir. 2002); Williams v. Artuz, 237 F.3d 147, 151 (2d Cir. 2001), cert. denied, 534 U.S. 924 (2001) (citing cases).  A habeas petitioner filing for collateral relief does not benefit from the 90 day certiorari period.  Lawrence v. Florida, 549 U.S. 327 (2007) (interpreting 28 U.S.C. § 2244(d)(2)).

The one-year limitations period for a claim that challenges a resentencing judgment begins on the date that the resentencing judgment becomes final, rather than the date that the original conviction became final.  Rashad v. Lafler, 675 F.3d 564, 568-569 (6th Cir. 2012); Bachman v. Bagley, 487 F.3d 979, 982 (6th Cir. 2007);

Frazier v. Moore, No. 2:05CV1112, 2006 WL 3146436, at *7 (S.D. Ohio Oct.31, 2006), aff'd, 2007 WL 3037256 (6th Cir. Oct. 17, 2007).

Previously, the Sixth Circuit had held that the beginning of the one-year statute of limitations period was based on the content of the petitioner's claims. Bachman, 487 F.3d at 984.  However, this is no longer the case.

The Sixth Circuit recently confirmed that, where a conviction has been affirmed, but there is separate direct review of a new sentence imposed at resentencing, "the new judgment becomes final after direct review of the new sentence."  Rashad, 675 F.3d at 568 (citing Burton v. Stewart, 549 U.S. 147 (2007) (per curiam)).  Based on the reasoning in Burton, "a habeas petitioner who files his first or sole habeas petition after he is resentenced may properly include all claims from the underlying conviction in that petition, since his criminal case did not end, thereby triggering the statute of limitations clock, until sentencing was completed." Coats v. Sheldon, No. 3:11CV1017, 2012 WL 7037778, at *7 (N.D. Ohio Aug. 20, 2012) (discussing Burton); see also Rashad, 675 F.3d at 568 (limitations period not yet started where direct review of resentencing not complete); Johnson v. Warden, Lebanon Corr. Inst., No. 1:09CV336, 2010 WL 2889056, at *6 (S.D. Ohio June 23, 2010) (limitations period does not begin until both conviction and sentence become final ) (quoting Burton, 549 U.S. at 156-157).

Here, the direct review of O'Neil's resentencing was completed on Oct. 5, 2011, when the state high court denied review of his appeal.  (Doc. 5, RX 26.)

11

O'Neil did not filed for certiorari before the U.S. Supreme Court, so his conviction became "final" for habeas purposes ninety days later, on January 4, 2012.  The statute of limitations to file his habeas petition expired one year later, on January 4, 2013.  O'Neil's petition was not filed until over two years after that, on May 15, 2015.  Thus, the petition was untimely filed.

## IV.  ACTUAL INNOCENCE

In his opposition, O'Neil argues that he is innocent of the charges against him, and that he should be granted habeas relief to avoid a miscarriage of justice. ([Doc. 6](Doc. 6).)

A petitioner's claim of actual innocence in a non-capital case does not entitle him to habeas relief absent an independent constitutional violation in the criminal proceeding.  Herrera v. Collins, 506 U.S. 390, 400 (1993); Cress v. Palmer, 484 F.3d 844, 854-855 (6th Cir. 2007); Appleman v. Turner,  52 F.3d 324, 1995 WL 218463, at *1 (6th Cir. 1995) (TABLE, text in WESTLAW) (citing Herrera).  In Schlup v. Delo,  the Supreme Court explained the difference between a procedural innocence claim, which can permit a petitioner to transcend procedural obstacles that would otherwise preclude review of underlying constitutional claims, and a substantive innocence claim.  Schlup v. Delo, 513 U.S. 298, 313-317 (1995).  The Supreme Court has held that actual innocence, if shown, can serve as a gateway through which a

petitioner may pass whether the impediment is a procedural bar, or expiration of the statute of limitations. McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013).

### A. Equitable Tolling

The Supreme Court has held that the habeas statute of limitations may be subject to equitable tolling in appropriate cases. Holland v. Florida, 560 U.S. 631 (2010). However, O'Neil bears the burden of persuading the court that he is entitled to equitable tolling. Connolly v. Howes, No. 04-2075, 2008 WL 5378012, at *4 (6th Cir. Dec. 23, 2008); Griffin v. Rogers, 308 F.3d 647, 653 (6th Cir. 2002); Day v. Konteh, No. 1:08CV0212, 2009 WL 3321388, at *10 (N.D. Ohio Oct. 13, 2009).

To benefit from equitable tolling, the petitioner must show that he has been pursuing his rights diligently, and that some extraordinary circumstance stood in his way. *Holland*, 560 U.S. at 649 (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *Lawrence*, 549 U.S. at 335. The Sixth Circuit has recently recognized that, "under the test articulated by the Supreme Court in *Holland*, a habeas petitioner must demonstrate both that he has been diligent in pursuing his rights and that an extraordinary circumstance caused his untimely filing." *Hall v. Warden, Lebanon Correctional Inst.*, 662 F.3d 745, 750 (6th Cir. 2011), *cert. denied*, 133 S.Ct. 187 (2012).

The Sixth Circuit concluded that "*Holland*'s two-part test has replaced *Dunlap*'s five-factor inquiry[3] as the governing framework in this circuit for

---

[3] *See Dunlap v. United States*, 250 F.3d 1001, 1008 (6th Cir. 2001).

13

determining whether a habeas petitioner is entitled to equitable tolling." *Hall*, 662 F.3d at 750; *see also Patterson v. Lafler*, No. 10-1379, 2012 WL 48186, at *2 (6th Cir. Jan. 9, 2012) (*Holland* is relevant test). Sixth Circuit case law has consistently held that the circumstances which will lead to equitable tolling are rare. *Hall*, 662 F.3d at 749 (equitable tolling granted "sparingly"); *Souter*, 395 F.3d at 590 (quoting *Schlup*, 513 U.S. at 321); *King v. Bell*, 378 F.3d 550, 553 (6th Cir. 2004); *see also Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir.), *cert. denied*, 531 U.S. 840 (2000) (rare and exceptional).

O'Neil does not demonstrate that any extraordinary circumstance prevented him from filing his petition within the one year limitations period; rather, he relies on his "actual innocence" argument. ([Doc. 6](#).)

### B. "Actual Innocence" Gateway

The Sixth Circuit has allowed for equitable tolling based on actual innocence under certain limited and extraordinary circumstances. *McSwain v. Davis*, No. 06-1920, 2008 WL 2744640 (6th Cir. July 15, 2008), *cert. denied*, 557 U.S. 919 (2009); *Souter*, 395 F.3d at 597-599; *see also McQuiggin*, 133 S. Ct. at 1928 (tenable actual innocence claims rare). In *Souter*, the petitioner was able to point to new evidence, unavailable at the time of his trial, supporting a credible claim of actual innocence. *See, e.g., Souter*, 395 F.3d at 583-584. The threshold inquiry was whether the new facts raised sufficient doubt about the petitioner's guilt to undermine confidence in

14

his conviction. *Souter*, 395 F.3d at 590 (quoting *Schlup*, 513 U.S. at 317). *Souter* stated:

> To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." [*Schlup*, 513 U.S. at 327]. The [Supreme] Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* at 321, 115 S.Ct. 851.

*Souter*, 395 F.3d at 590; *see also McQuiggin*, 133 S. Ct. at 1928; *Maag v. Konteh*, No. 3:05CV1574, 2006 WL 2457820, at *1 (N.D. Ohio Aug. 23, 2006).

It is O'Neil's burden to show that this is "one of those extraordinary cases where a credible claim of actual innocence has been established by new evidence." *McSwain*, 2008 WL 2744640. To support his claim of equitable tolling, O'Neil must present "new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324; *Souter*, 395 F.3d at 590. These examples were not meant to be an exhaustive list. *Souter*, 395 F.3d at 593 n.8.

The Supreme Court has emphasized that "the *Schlup* standard is demanding and permits review only in the 'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006) (citing *Schlup*, 513 U.S. at 327); *see also McQuiggin*, 133 S. Ct. at 1928;

15

*Connolly*, 208 WL 5378012, at \*4.  To demonstrate the actual innocence that would allow a court to consider a time-barred constitutional claim, a habeas petitioner must present "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]"  *Connolly*, 208 WL 5378012, at \*4 (quoting *Schlup*, 513 U.S. at 316).

O'Neil bases his argument for his innocence on DNA testing, which he contends should preclude his conviction.  (Doc. 6, at 4-5.)  However, the DNA issue is not new evidence.  Counsel for O'Neil presented the same argument to the state court of appeals in his direct appeal in 2009.  (Doc. 5, RX 9, at 4, 10-11.)  O'Neil has failed to carry his burden to show that his is one of those extraordinary cases where a credible claim of actual innocence has been established by new evidence.

The petition was filed more than two years outside the habeas statute of limitations; the motion to dismiss (doc. 5) should be granted.

## V.  RECOMMENDATION

The motion to dismiss (doc. 5) should be granted, and the petition denied as untimely filed.

Dated:  Feb. 2, 2016                    /s/ Kenneth S. McHargh
                                        Kenneth S. McHargh
                                        United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  See *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).